THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, : | |
| : | |
| Plaintiff, : | |
| : | |
| v.    : | Case Number: 06-CR-21-01-RBW |
| : | |
| : | |
| CINQUAN BLAKNEY, : | |
| : | |
| Defendant. : | |
| : | |

**MOTION TO SUPPRESS
INTRODUCTION OF THE FRUITS OF THE SEARCH
FROM 2101 RIDGECREST COURT**

COMES NOW THE DEFENDANT, CINQUAN BLAKNEY pursuant to the *Fourth*, *Fifth* and *Sixth* Amendments of the Constitution of the United States of America; *Fed.R.Crim.P.* 12(b)(3)(C); and *Fed.R.Crim.P* 47.  He files the application for order through his court appointed attorney, Anthony D. Martin, and moves to suppress the fruits of the search of the residence located at 2101 Ridgecrest Court, Apartment Number 204, SE, Washington, DC.

*Procedural Posture*

Defense pre-trial motions are due on October 26, 2007. The government's response is due on November 23, 2007.  The Defense reply is due on December 14, 2007.  A status conference is set for January 11, 2008.  Argument on the motions has been set for March 3, 2008. Jury selection is set for March 11, 2008 and the trial is scheduled to begin on March 12, 2008.  The trial is expected to last through the month of June 2008.

*Background*

CINQUAN BLAKNEY was arrested on January, 26th, 2006.  Mr. Blakney has been in custody from the date of his arrest to the present and continuing.  He is being held at the District

of Columbia Jail. He has been charged in a multi-count indictment alleging violations of 21 USC §841 and 846, 18 USC §1519, and 18 USC §2510, *et seq*, *inter alia*. A great deal of the evidence against Mr. Blakney is expected to take the form of audio recordings.

Mr. Blakney's arrest followed several months of investigation conducted by the "Safe Streets Task Force". The task force was composed of law enforcement personnel from the Federal Bureau of Investigation and the Metropolitan Police Department. It appears that the investigation was a spin off from an earlier investigation, where a great deal of information was learned about Mr. Blakney. Indeed, that earlier investigation resulted in the indictment of several individuals. The case was styled *United States v. Gerald Eiland;* and went to trial in March 2006. Although within the scope of the investigation; Mr. Blakney was not indicted in the *Eiland* case. The Eiland trial included several informants and cooperating witnesses; some of whom may give testimony in this case.

Traditional investigative methods were successfully used by the government in the *Eiland* case. Some of those same investigative methods were also used in the case now before the court; including confidential sources and cooperating witnesses. (*See, e.g*. Affidavit of Det Giannakoulias; January 2006 Bates No. SW 279; February 2006 Bates No. SW 294.) In addition to the use of informants and cooperating witnesses in this case, the government used wires on the informants and camcorders to record drug sales with at least two of the alleged co-conspirators. Despite the apparent availability of traditional investigative techniques and the progress of the investigation using methods not offensive to the 4th Amendment; the government agents sought wiretap authorization on Kevin Morris's phones as early as late September 2005. Subsequent to the questionable monitoring of Mr. Morris's phones, authorization was sought to monitor phones thought to be used by Cinquan Blakney in November of 2005. The same was granted by Judge

Sullivan of this court on November 22nd, 2005. The government based its application for a search warrant on the residence at 2101 Ridgecrest Court on the information received from wiretaps that are contested by Mr. Blakney.

*Argument*

**THE SEARCH OF APARTMENT 204, 2101 RIDGECREST COURT, WAS CONDUCTED ONLY AS A RESULT OF THE INFORMATION RECEIVED BY THE GOVERNMENT THROUGH THE TITLE III AUTHORIZATION. GIVEN THE ILLEGALITY OF THE WIRETAPS, ANY FRUITS THEREFROM ARE TAINTED AND SHOULD BE DECLARED INADMISSIBLE FOR ANY PURPOSE DURING THE TRIAL.**

**A. The Exclusionary Rule Demands the Items Seized from the Residence Located at 2101 Ridgecrest Court be Declared Inadmissible.**

Under the Exclusionary Rule, evidence obtained in violation of the Fourth, Fifth or Sixth Amendments may not be introduced at trial for the purpose of proving a defendant's guilt. *See generally, Mapp v. Ohio,* 367 US 643, 654-55 (1961); *Weeks v. United States,* 232 US 383, 398 (1914). Should the court agree with Mr. Blakney's argument regarding the constitutional and procedural infirmity of the Title III application, the government is required to show sufficient attenuation before the fruits of the residential search can be admitted. *Wong Sun v. United States*, 371 US 471, 488 (1963).

In determining whether there is sufficient attenuation form the initial taint, three factors were identified by the Supreme Court as guide posts. *Brown v. Illinois*, 422 US 590, 603 (1975). The first is the amount of time that has passed since the illegality and the acquisition of the evidence. The second factor is the presence of intervening circumstance. **The third is the purpose and flagrancy of the official misconduct**. The defendant's argument focuses on the third factor, since the necessity requirement was deliberately sidestepped, without regard to constitutional proscriptions or judicial caveats.

Mr. Blakney maintains that but for the illegal procurement of the Title III authorization; the government would not have had a basis for filing its application to search the Ridgcrest Apartment. Indeed, the affidavit in support of the application for the search warrant lists the Title III intercepts as the primary source of the information contained in the affidavit. (Bates No. SW 000284). Although other methods of investigation are mentioned on that same page, it is obvious from the government affidavits in support of the Title III application that those investigative techniques were not relied upon to the extent that the wiretaps were. Further proof that the government relied heavily upon the wiretap is the charging document itself; which lists dozens of telephone contacts as substantive counts.

### *Conclusion*

Given the government's failure to satisfy the "necessity requirement" under Title III all of the audio recordings and all fruits thereof should be suppressed; including those items identified as contraband that were seized from 2101 Ridgecrest Court.

### *Prayer*

CINQUAN BLAKNEY requests that the court rule that the contraband found at 2101 Ridgecrest Court are fruits of the illegal recordings and inadmissible as evidence and for any other purpose during the trial.

Respectfully submitted,

By: _____
ANTHONY D. MARTIN, 362-537
BELLE POINT OFFICE PARK
7841 Belle Point Drive
Greenbelt, MD 20770
(301) 220-3700; (301) 220-0791 (fax)

*Attorney for Cinquan Blakney*